IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

MARY LEWIS,                          *
                                     *
      Plaintiff,                     *     CIVIL ACTION NO. 15-00447-KD-B
                                     *
vs.                                  *
                                     *
CAROLYN W. COLVIN,                   *
Commissioner of Social               *
Security,                            *
                                     *
      Defendant.                     *

## REPORT AND RECOMMENDATION

Plaintiff Mary Lewis (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*[1]   This action was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).  Upon consideration of the administrative record and memoranda of the parties, it is **RECOMMENDED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History

Plaintiff filed her application for benefits on April 10, 2012.  (Tr. 159, 182).  Plaintiff alleges that she has been

---

[1] Plaintiff withdrew her claim for SSI benefits.  (Tr. 75).

disabled since December 30, 2011, due to a "stroke."  (Id. at 182, 186).

Plaintiff's application was denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge James F. Barter (hereinafter "ALJ") on July 29, 2013. (Id. at 47).  Plaintiff attended the hearing with her counsel and provided testimony related to her claims.  (Id. at 51).  A vocational expert ("VE") also appeared at the hearing and provided testimony.  (Id. at 69).  On January 17, 2014, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled.  (Id. at 42).  The Appeals Council denied Plaintiff's request for review on July 14, 2015.  (Id. at 1-2).  Therefore, the ALJ's decision dated January 17, 2014, became the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1).  Oral argument was conducted on December 12, 2016.  (Doc. 25).  The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II.  **Issues on Appeal**

1. **Whether substantial evidence supports the ALJ's decision that Plaintiff can perform her past work as a collar turner?**

2. **Whether the ALJ's decision to discredit**

       Plaintiff's complaints of pain is supported
       by substantial evidence?

   **3.**   **Whether the ALJ erred in failing to consider all of Plaintiff's impairments in determining her RFC?**

## III. Factual Background

Plaintiff was born on January 17, 1960, and was fifty-three years of age at the time of her administrative hearing on July 29, 2013. (Tr. 47, 51, 182). Plaintiff graduated from high school, completing the twelfth grade. (Id. at 51, 186). She also obtained an associates degree in cosmetology. (Id. at 52, 187).

Plaintiff last worked as a cook at a nursing home between 2009 to 2010. (Id. at 54, 187). Prior to that, she worked as a seamstress in a hat factory, as a seamstress in a tent factory, as a foreman at a lumber company, and as a "buttoner" and collar turner at a sewing plant.[2] (Id. at 52-54, 187). At her hearing, Plaintiff testified that she thought that she had a stroke in December 2011 because of problems with her memory. She testified that she currently has problems with memory, high cholesterol, and weakness in her left arm and leg. She uses a cane for her back and legs. (Id. at 59).

---

[2] According to Plaintiff, as a buttoner, she buttoned shirts and turned down collars. (Doc. 12 at 52).

IV.  **Analysis**

A.  **Standard of Review**

In  reviewing  claims  brought  under  the  Act,  this  Court's role  is  a  limited  one.    The  Court's  review  is  limited  to determining  1)  whether  the  decision  of  the  Secretary  is supported  by  substantial  evidence  and  2)  whether  the  correct legal  standards  were  applied.[3]   Martin  v.  Sullivan,  894  F.2d 1520,  1529  (11th  Cir.  1990).    A  court  may  not  decide  the  facts anew,  reweigh  the  evidence,  or  substitute  its  judgment  for  that of  the  Commissioner.   Sewell  v.  Bowen,  792  F.2d  1065,  1067  (11th Cir.  1986).    The  Commissioner's  findings  of  fact  must  be affirmed  if  they  are  based  upon  substantial  evidence.   Brown  v. Sullivan,  921  F.2d  1233,  1235  (11th  Cir.  1991);  Bloodsworth  v. Heckler,  703  F.2d  1233,  1239  (11th  Cir.  1983)  (holding substantial  evidence  is  defined  as  "more  than  a  scintilla,  but less  than  a  preponderance"  and  consists  of  "such  relevant evidence  as  a  reasonable  person  would  accept  as  adequate  to support  a  conclusion.").    In  determining  whether  substantial evidence  exists,  a  court  must  view  the  record  as  a  whole,  taking into  account  evidence  favorable,  as  well  as  unfavorable,  to  the Commissioner's  decision.   Chester  v.  Bowen,  792  F.  2d  129,  131 (11th  Cir.  1986);  Short  v.  Apfel,  1999  U.S.  Dist.  LEXIS  10163,  *4

---

[3] This  Court's  review  of  the  Commissioner's  application  of  legal principles  is  plenary.  Walker  v.  Bowen,  826  F.2d  996,  999  (11th Cir.  1987).

(S.D. Ala. June 14, 1999).

**B.   Discussion**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4] 20 C.F.R.

_____

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since December 30, 2011, the alleged onset date, and that she has the severe impairments of obesity, hypertension, and depression. (Tr. 35). The ALJ found that Plaintiff has the non-severe impairments of high cholesterol and left ankle pain. (Id. at 36). The ALJ further found that Plaintiff's stroke, arthritis, and fibromyalgia were "not medically determinable." (Id.). Based on the evidence in the record, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1.[5] (Id. at 37).

The ALJ concluded that Plaintiff retains the residual

---

claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

[5] In evaluating Plaintiff's mental impairment, the ALJ applied the "paragraph B criteria" of Listing 12.04 and found that Plaintiff has mild restrictions in activities of daily living, mild difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and no episodes of decompensation which have been of extended duration. (Tr. 37).

functional capacity (hereinafter "RFC") to perform a range of light work, with the following limitations: "[Plaintiff] is unable to climb ladders, ropes, or scaffolds. [She] is able to stoop, kneel, crouch, crawl, and climb stairs occasionally. [She] should avoid concentrated exposure to extreme heat, extreme cold, and hazards. [She] is limited to the simple, routine tasks of unskilled work that require only simple workplace decisions and few changes in the work setting." (Id. at 39).

The ALJ also determined that while Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, her statements concerning the intensity, persistence and limiting effects of the alleged symptoms were only partially credible for the reasons explained in the decision. (Id. at 39-40). Relying on the testimony of the VE, the ALJ found that Plaintiff is capable of performing her past relevant work as a collar turner, which is classified as light and unskilled work (DOT #789.687-182). (Id. at 41-42, 52, 70). Thus, the ALJ concluded that Plaintiff is not disabled. (Id. at 42).

The Court now considers the foregoing in light of the record in this case and the issues on appeal.

> 1. **Whether substantial evidence supports the ALJ's decision that Plaintiff can perform her past work as a collar turner.**

7

On appeal, Plaintiff argues that the ALJ's finding that she can perform her past work as a collar turner is not supported by substantial evidence.  (Doc. 16 at 2).  First, Plaintiff asserts that a significant portion of the VE's testimony is "inaudible" making it impossible to evaluate the VE's testimony and, second, that the remaining testimony by the VE fails to support the ALJ's finding.  (Id. at 2-3).  The Court disagrees.

The record shows that the ALJ questioned the VE about Plaintiff's ability to perform her past work as a collar turner as follows:

> Q. I will assume that your testimony today is based on your knowledge, education, training and experience and is consistent with the DOT unless you tell me otherwise.
>
> A. Yes sir.
>
> Q. Now, do you have enough information to testify regarding her past work?
>
> A. Yes, sir.
>
> Q. Tell me about that past work then.
>
> A. Yes, sir.  Ms. Lewis has worked as a sewing machine operator[,] . . . as a lumber grader[,] as a garment examiner/garment turner [phonetic] and that would be DOT code 369.687-022 and that's light and semi-skilled and a garment examiner/garment turner is (sic) 789.687-182, that's light, semi-skilled with a SVP of a 3. . . .
>
> Q. . . . I'd like you to assume an individual who's the same age, the same education and the same past work who is

limited to the light exertion level.   She
should do no climbing of ladders, ropes or
scaffolds; occasionally climb stairs, stoop,
crouch, kneel, crawl.   She should avoid
concentrated exposure to extreme heat or
extreme cold and hazards.   Would such an
individual be able to perform any of the
claimant's past work?

A. I would say that the past relevant work
would be essentially [phonetic] – that any
greater would be consistent as it would, you
know, occasionally with [inaudible] or
hazards.

Q. Now, if I were to change that, though,
and so that the individual would be limited,
excuse me, to simple/routine tasks of
unskilled work that would require only
simple workplace decisions and would only
have few changes in the work setting, would
that individual be able to perform any of
the past work?

A. The lumber grader and garment trimmer
would be classified as light and I feel it
would be appropriate.

(Id. at 69-72).

As stated, Plaintiff first argues that the inaudible
portions of the VE's testimony render it impossible to determine
whether substantial evidence supports the ALJ's decision that
Plaintiff can perform her past work as a collar turner.   The
Court has considered this argument, and finds that, while the
VE's response to the first hypothetical (as transcribed in the
hearing transcript) is impossible to decipher, it is not fatal
because the first hypothetical did not include the portion of
the RFC limiting Plaintiff to simple/routine tasks of unskilled

work.   The  record  reflects  that  the  ALJ  followed  up  with  a second,  complete  hypothetical  that  added  Plaintiff's  restriction to  simple/routine  tasks  of  unskilled  work,  and  the  VE's  response to  that  hypothetical  is  clearly  discernable  and  is  reflected  in the  hearing  transcript.    Thus,  Plaintiff's  argument  regarding the  inaudible  portions  of  the  VE's  testimony  must  fail.

Plaintiff  next  argues  that  the  ALJ's  finding  that  she  can perform  her  past  work  as  a  collar  turner[6]  is  not  supported  by substantial  evidence  because  her  RFC  limited  her  to  light, "unskilled"  work,  and  the  VE  testified  that  the  job  of  garment turner  is  "semi-skilled."    While  Plaintiff  does  not  dispute  that the  DOT  classifies  the  job  of  collar  turner  as  light  and "unskilled,"  see  DOT  #789.687-182,  she  argues  that  the  VE's testimony  conflicts  with  the  DOT's  classification  and  that  the conflict  must  be  resolved  in  favor  of  the  VE's  testimony,  which does  not  support  the  ALJ's  determination  that  she  can  perform this  past  work.    The  Court  disagrees.

While  Plaintiff  is  correct  that  the  testimony  of  a vocational  expert  "trumps"  an  inconsistent  provision  of  the  DOT in  this  Circuit,  see  Miller  v.  Commissioner  of  Soc.  Sec.,  246  F.

---

[6] The  job  of  collar  turner  appears  to  be  synonymous  with  garment turner,  garment  clipper,  and  garment  trimmer.    (Tr.  71).    See also  DOT  #789.687-182.    Indeed,  the  terms  appear  to  be  used interchangeably,  and  Plaintiff  does  not  dispute  that  the  VE's testimony  regarding  garment  examiner,  garment  turner,  and garment  trimmer  encompassed  her  past  job  as  a  collar  turner.

Appx. 660, 662 (11th Cir. 2007), in this case, the VE resolved any apparent conflict between his testimony and the DOT when he responded to the ALJ's second hypothetical that added "unskilled" work. The record reflects that while the VE initially described Plaintiff's past work of garment examiner (or garment turner) as light and semi-skilled, which conflicts with the DOT's classification, the VE, in response to the second, complete hypothetical which included Plaintiff's limitation to the "**simple**/**routine** tasks of **unskilled** work," "simple workplace decisions," and "few changes in the work setting," expressly stated that Plaintiff's past work as a garment trimmer/turner would be "appropriate." (Id. at 71) (emphasis added). Thus, any apparent conflict between the VE's initial testimony and the DOT on this issue was resolved by the VE's response to the second, complete hypothetical.

Also, while Plaintiff is correct that the VE further testified that, if the same individual had the additional restriction of being able to stand/walk in combination for only two hours a day, that individual would not be able to perform any of Plaintiff's past work (id. at 71-72), that restriction is not included in Plaintiff's RFC. Thus, the VE's testimony in that regard is not relevant to this issue.

Accordingly, notwithstanding the inaudible portions of the VE's testimony and the apparent initial conflict between the

VE's testimony and the DOT definition of collar turner, when considered as a whole, the VE's clear testimony that an individual restricted to "unskilled" work could perform Plaintiff's past work as a collar turner constitutes substantial evidence supporting the ALJ's determination on this issue. Therefore, Plaintiff's claim is without merit.

### 2. Whether the ALJ's decision to discredit Plaintiff's complaints of pain is supported by substantial evidence.

Next, Plaintiff argues that the ALJ's decision to discredit her complaints of pain is not supported by substantial evidence. (Doc. 16 at 5).  Plaintiff asserts that the record is replete with her reports of back pain, knee pain, hip pain, left shoulder pain, and foot pain (Tr. 98, 207, 210, 212, 252, 259, 263-264, 285, 311-312, 354, 361, 378, 379, 385, 391, 392), and with diagnoses of arthritis.  Plaintiff further argues that the ALJ erred in disregarding an x-ray taken of her left ankle on December 28, 2011, which showed swelling, spurring, and calcification.  Plaintiff contends that these records constitute objective evidence which substantiates her complaints of pain. (Doc. 16 at 5).  Plaintiff also argues that the ALJ erred in requiring laboratory tests to validate her claim of arthritis. (Id.).

The Commissioner responds that the ALJ properly evaluated Plaintiff's complaints of pain and that the ALJ articulated

valid reasons for discounting Plaintiff's subjective statements and for concluding that Plaintiff's complaints were less than credible, given the inconsistency between those complaints and the medical and other evidence of record. (Doc. 21 at 4). The Commissioner further points out that the ALJ explicitly considered Plaintiff's ankle x-ray and properly found that the x-ray does not support the severity of pain alleged by Plaintiff. (Id. at 7). The Commissioner maintains that the ALJ's evaluation of Plaintiff's subjective symptoms is supported by substantial evidence. Having carefully reviewed the record in this case, the Court agrees that Plaintiff's claim is without merit.

When evaluating a claim based on disabling subjective symptoms, the ALJ considers medical findings, a claimant's statements, statements by the treating physician or other persons, and evidence of how the pain (or other subjective symptoms) affects the claimant's daily activities and ability to work. 20 C.F.R. § 416.929(a). In a case where a claimant attempts to establish disability through his or her own testimony concerning pain or other subjective symptoms, a three-part standard applies. That standard requires: "(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain [or other subjective symptoms] arising from that condition or (3)

that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain [or other subjective symptoms]." Hubbard v. Commissioner of Soc. Sec., 348 Fed. Appx. 551, 554 (11th Cir. 2009) (unpublished) (quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). The Social Security regulations provide:

> [S]tatements about your pain or other symptoms will not alone establish that you are disabled; there must be medical signs and laboratory findings which show that you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all of the other evidence (including statements about the intensity and persistence of your pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that you are disabled.

20 C.F.R. 404.1529(a) (2013). "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995).

When evaluating a claim based on disabling subjective symptoms, the ALJ must consider all of the claimant's statements about her symptoms and determine the extent to which the symptoms can reasonably be accepted as consistent with the

objective medical evidence. See 20 C.F.R. § 404.1528. If an ALJ decides not to credit a claimant's testimony about his or her subjective symptoms, "the ALJ must articulate explicit and adequate reasons for doing so or the record must be obvious" as to the finding. Strickland v. Commissioner of Soc. Sec., 516 Fed. Appx. 829, 832 (11th Cir. 2013) (unpublished) (citing Foote, 67 F.3d at 1562). Failure to articulate the reasons for discrediting testimony related to pain or other subjective symptoms requires, as a matter of law, that the testimony be accepted as true. Holt, 921 F.2d at 1223.

The Eleventh Circuit has held that the determination of whether objective medical impairments could reasonably be expected to produce the pain or other subjective symptoms is a factual question to be made by the Secretary and, therefore, "subject only to limited review in the courts to ensure that the finding is supported by substantial evidence." Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1985), vacated on other grounds and reinstated sub nom., Hand v. Bowen, 793 F.2d 275 (11th Cir. 1986). A reviewing court will not disturb a clearly articulated finding related to a claimant's claims of disabling subjective symptoms, with substantial supporting evidence in the record. See Nye v. Commissioner of Social Sec., 524 Fed. Appx. 538, 543 (11th Cir. 2013) (unpublished).

"Regulation 96-7p and 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) require the ALJ to consider the consistency of subjective complaints." Lindsey v. Colvin, 2016 U.S. Dist. LEXIS 129547 *12-13, 2016 WL 5253219, *5 (N.D. Ala. Sept. 22, 2016) (quoting Majkut v. Commissioner of Soc. Sec., 394 Fed. Appx. 660, 663 (11th Cir. 2010)). SSR 16-3p is a new ruling which replaces SSR 96-7p and provides as follows: "[w]e are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding symptom evaluation." SSR 16-3p, 2016 SSR LEXIS 42016, WL 1119029, *1. The effect of the new ruling has been described as follows:

> Both SSR 96-7p and SSR 16-13p direct that evaluation of a claimant's subjective symptoms shall consider all evidence in the record. Both Rulings also incorporate the regulations, 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3), that identify factors to be considered in evaluating the intensity, persistence and functionally-limiting effects of the symptoms, including a claimant's daily activities; the nature, duration, frequency and intensity of her symptoms; precipitating and aggravating factors; and the type of medication and other treatment or measures used for the relief of pain and other symptoms, i.e., the familiar factors identified in Polaski v. Heckler, 739 F.2d 1320 (8th Cir. 1984). But while SSR 96-7p expressly provided that a credibility finding was required to be made

> under those regulations, SSR 16-3p expressly
> provides that use of the term "credibility"
> was being eliminated because the SSA
> regulations did not use it. 81 F.R. at
> 14167. SSR 16-3p further provides: In
> [eliminating reference to "credibility"], we
> clarify that subjective symptom evaluation
> is not an examination of an individual's
> character. Instead, we will more closely
> follow our regulatory language regarding
> symptom evaluation. Id. SSR 16-3p also
> expressly provides that the ALJ may not make
> conclusory statements about having
> considered the symptoms, or merely recite
> the factors described in the regulations.
> Rather, the determination or decision must
> contain specific reasons for the weight
> given to the individual's symptoms, be
> consistent, and supported by the evidence,
> and be clearly articulated so the individual
> and any subsequent reviewer can assess how
> the adjudicator evaluated the individual's
> symptoms. Id. at 14171.

Martsolf v. Colvin, 2017 U.S. Dist. LEXIS 2748, *14-15, 2017 WL

77424, *5 (W.D. Mo. Jan. 9, 2017).

In a recent case, McVey v. Commissioner of Soc. Sec., 2016

U.S. Dist. LEXIS 93884, *14, 2016 WL 3901385, *5 (M.D. Fla. July

19, 2016), the court applied the new ruling and held that the

ALJ erred in basing her credibility determination on the fact

that the claimant had made inconsistent statements concerning

his sobriety, a matter which was unrelated to his impairment.

The court explained the new ruling as follows:

> Adjudicators must limit their evaluation to
> the individual's statements about his or her
> symptoms and the evidence in the record that
> is relevant to the individual's impairments.

> In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities.

Id. (quoting Evaluation of Symptoms in Disability Claims, SSR 16-3p, 81 Fed. Reg. 14166-01, 2016 WL 1119029 (Mar. 16, 2016)).

Further, in applying the new rule in Lindsey, 2016 U.S. Dist. LEXIS 129547 at *13, 2016 WL 5253219 at *5, the court held that "[i]nconsistencies and conflicts in the record evidence and the claimant's statements about her symptoms may provide a basis for discounting the extent of claimant's statements." To that end, the Commissioner's regulations state:

> In determining the extent to which your symptoms, such as pain, affect your capacity to perform basic work activities, we consider all of the available evidence.... We will consider your statements about the intensity, persistence, and limiting effects of your symptoms, and we will evaluate your statements in relation to the objective medical evidence and other evidence, in reaching a conclusion as to whether you are disabled. We will consider whether there

are any inconsistencies in the evidence and the extent to which there are any conflicts between your statements and the rest of the evidence, including your history, the signs and laboratory findings, and statements by your treating or nontreating source or other persons about how your symptoms affect you. Your symptoms, including pain, will be determined to diminish your capacity for basic work activities to the extent that your alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence.

Id. (quoting 20 C.F.R. § 404.1529(c)(4)).

"Also, evidence that the claimant is malingering or otherwise magnifying or exaggerating her symptoms is evidence that the symptoms are less likely to reduce the claimant's capacity to perform work related activities." Lindsey, 2016 U.S. Dist. LEXIS 129547 at *13, 2016 WL 5253219 at *5 (citing Miles v. Commissioner of Soc. Sec., 652 F. Appx. 923, 927 (11th Cir. 2016); Mills v. Astrue, 396 Fed. Appx. 621, 623 (11th Cir. 2010); Moore v. Barnhart, 405 F.3d 1208, 1213 (11th Cir. 2005); Sanders v. Astrue, 974 F. Supp. 2d 1316, 1327 (N.D. Ala. 2013)).

Having reviewed the record at length, the Court concludes that the ALJ properly applied the pain standard in this case, that substantial evidence supports the ALJ's determination that Plaintiff's testimony was inconsistent with the objective medical evidence and other evidence of record, and that the substantial evidence does not establish a medically determinable

impairment that could reasonably be expected to produce the intensity and persistence of symptoms alleged so as to prevent Plaintiff from performing work-related activities required by the RFC.

In his decision, the ALJ correctly recited the pain standard and indicated that he considered all of Plaintiff's symptoms based on the requirements set forth in 20 C.F.R. § 404.1529. The ALJ then articulated specific reasons for his determination that Plaintiff's alleged pain does not affect her capacity to perform basic work activities required by the RFC.

The ALJ found that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms to some degree; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible for the reasons explained in this decision." (Tr. 39). The ALJ concluded that Plaintiff's complaints were inconsistent with other evidence in the record, including normal imaging studies, normal examination findings, generally conservative treatment, medical opinions showing significantly greater functional ability than that alleged by Plaintiff, and Plaintiff's activities of daily living. (Id. at 36-42).

For example, despite Plaintiff's allegations of disabling ankle pain and inability to stand or walk without a cane, the

ALJ noted that consultative examiner, Dr. Huey Kidd, found that Plaintiff's physical functioning was essentially normal on examination, that she had full range of motion, 5/5 strength in her upper and lower extremities, 5/5 grip strength bilaterally, normal heel/toe walk, and was able to bend, touch her toes, squat, and stand without difficulty. (Id. at 36, 40, 358). In addition, as the ALJ noted, Plaintiff reported to Dr. Kidd that she was taking over-the-counter medications as needed for pain. (Id. at 40, 357). Similarly, records from Plaintiff's treatment provider at the Coffeeville Medical Clinic showed that Plaintiff had active range of motion and walked with a normal, "stable" gait. (Id. at 36, 385).

With regard to Plaintiff's allegations related to disabling symptoms caused by a stroke, the ALJ found that the medical evidence did not support Plaintiff's claim that she had a stroke. (Id. at 36). Specifically, Plaintiff's hospital records from December 28, 2011, showed that she presented with complaints of being lightheaded, weak, and sweating; however, a CT scan of Plaintiff's brain was normal, with no evidence of intracranial hemorrhage; a chest x-ray was normal (id. at 263-64); a neurological examination was normal (id. at 290); and she had 4/5 strength in her left upper and lower extremities, 5/5 strength in her right upper and lower extremities, intact sensation, and normal mood and affect. (Id. at 259, 262). She

was diagnosed with "near syncope" (fainting), mechanical fall, unstable angina, and headache. (Id. at 266). The following day Plaintiff was improved and discharged with instructions to return to usual activities as tolerated.[7] (Id. at 266, 288, 291). A subsequent CT scan taken of Plaintiff's brain in March 2013 was also normal. (Id. at 36, 388).

As the ALJ noted, on June 19, 2012, consultative psychological examiner, Dr. Nina Tocci, Ph.D., documented that Plaintiff spoke without impediment, had no aphasia or blocking (id. at 361), had appropriate, normal, and stable affect, had normal orientation, demonstrated fair attention but scattered concentration, had a good fund of information and comprehension, although her ability to abstract was limited, demonstrated appropriate thought content and logical thought organization, demonstrated some insight into her behavior and good social judgment, and appeared to be functioning within the borderline range of intellectual ability. (Id. at 361-62). Dr. Tocci also noted that Plaintiff's posture, gait, and motor activity were normal. (Id. at 361). Similarly, on May 9, 2013, Plaintiff's treatment provider at the Coffeeville Medical Clinic noted that Plaintiff had "good verbal skills," "excellent communication,"

---

[7] On September 11, 2012, State Agency medical consultant James Upchurch, M.D., correctly noted that there was no medical evidence that Plaintiff had suffered a cerebrovascular accident. (Tr. 365).

and ambulated with a "stable gait" with "no limitation with mobility." (Id. at 393).

With respect to Plaintiff's complaints of pain in her joints, back, leg, knee, hip, and shoulder from arthritis, her treatment notes from the Coffeeville Medical Clinic on June 20, 2013, reflect that she presented with a cane but put it aside during the examination and climbed onto the exam table without difficulty, that she had no swelling or reduced range of motion, that she ambulated with a stable gait, and that she had no mobility limitations. (Id. at 392-93). The notes further reflect that she was mentally oriented times three, that she had "good" verbal skills, and that she had "excellent" communication skills. (Id. at 393).

With respect to Plaintiff's allegations of symptoms related to depression, the ALJ noted that the record contained no evidence of treatment from a psychologist or psychiatrist. (Id. at 38, 40). The ALJ also noted Plaintiff's activities of daily living, which included attending church every Sunday, taking care of her own personal needs, and driving. (Id. at 37, 56-57).

Plaintiff does not dispute the foregoing evidence but argues that the ALJ failed to consider an ankle x-ray from December 2011 which showed swelling, spurring, and calcification in her left ankle. (Doc. 16 at 5). To the contrary, the record

shows that the ALJ did consider the x-ray but found that it did not substantiate her complaints of disabling pain, particularly given Dr. Kidd's findings that she had full range of motion in her extremities, 5/5 strength in her extremities, and could heel/toe walk without difficulty.[8]  (Id. at 36, 263-64, 358).

The Court is also unpersuaded by Plaintiff's argument that the ALJ improperly required her to have diagnostic tests to prove her diagnosis of arthritis.  (Doc. 16 at 6).  The ALJ did not require diagnostic testing to prove Plaintiff's arthritis, but he took note of the fact that the diagnostic tests and imaging results that were in the record, along with the physical examination findings and remaining medical evidence in the record, were inconsistent with Plaintiff's claims of disabling arthritis pain.[9]  (Id. at 36).

---

[8] While Plaintiff does not mention the Medical Source Statement and Clinical Assessment of Pain forms completed by Dr. Judy Travis, M.D., on November 7, 2012, which essentially opined that Plaintiff is unable to work because of the severity of her pain, the Court has considered those forms and finds, as the ALJ found, that they are completely inconsistent with the substantial evidence in the case.  Dr. Travis' own sparse treatment notes likewise provide no support for these opinions.  (Tr. 355-55, 372-79).

[9] The Court notes that the ALJ found that Plaintiff's arthritis was not a medically determinable impairment, a finding which is supported by substantial evidence in the record.  (Tr. 36).  However, even assuming that the ALJ's finding was error, it was harmless given the substantial medical evidence showing that Plaintiff has no limitations from arthritis exceeding her RFC.

Based on the foregoing, the Court concludes that the ALJ properly evaluated Plaintiff's pain symptoms and that substantial evidence supports the ALJ's determination that the intensity and persistence of the alleged symptoms do not limit Plaintiff's ability to perform work-related activities required by her RFC.  Therefore, Plaintiff's claim is without merit.

### 3. Whether the ALJ erred in failing to consider all of Plaintiff's impairments in determining her RFC.

Last, Plaintiff argues that the RFC is not supported by substantial evidence because it fails to take into account the combined effect of all of her impairments, namely, her "difficulty with memory."  (Doc. 16 at 6).  Plaintiff argues that the consultative examination performed by Dr. Tocci on June 19, 2012 revealed "difficulty with some aspects of her memory" and that Plaintiff "has the ability to perform rehearsed tasks but would have difficulty concentrating, completing tasks in a timely manner, and completing tasks to specification."  (Id.; Tr. 362).  Plaintiff also points to the finding of State Agency reviewing psychiatrist, Dr. Harold Veits, M.D., that Plaintiff has "marked" difficulties in maintaining concentration, persistence or pace.  (Id. at 100).  According to Plaintiff, neither the ALJ's RFC nor his hypothetical to the VE took these mental limitations into consideration; thus, the RFC is not supported by substantial evidence.  (Id.).

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his or her impairments, and must be supported by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

Contrary to Plaintiff's argument in this case, the record shows that the ALJ expressly considered both the opinions of Dr. Tocci and Dr. Veits in determining Plaintiff's RFC. First, with respect to Dr. Tocci, the ALJ properly gave "some weight," as opposed to "controlling weight," to Dr. Tocci's opinion that Plaintiff would have difficulty concentrating, completing tasks in a timely manner, and completing tasks to specification, given that the opinion was inconsistent with the other substantial

evidence of record which showed greater functional ability than that opined by Dr. Tocci.   (Id. at 35-41, 362).   It is noteworthy that Dr. Tocci's records document that Plaintiff reported having problems with her memory as a result of having a "little light stroke" in December 2011, but Dr. Tocci expressly noted that there were no medical records from that event in the file and that "if records detailing the stroke are available, they should be reviewed." (Id. at 360, 362).   As previously discussed, Plaintiff's medical records do not support a finding that she had a stroke in December 2011 or at any other time.

Moreover, with respect to Dr. Veits, the record shows that the ALJ gave "some weight" to Dr. Veits' opinions but found that an assessment of "moderate" difficulties in maintaining concentration, persistence or pace was more consistent with the record as whole, particularly given the absence of medical evidence that Plaintiff had suffered a stroke.   (Id. at 40-41). Moreover, as the ALJ pointed out, Dr. Veits further opined that, even with Plaintiff's mental limitations, she can understand, remember, and carry out short and simple instructions and is able to concentrate and attend for periods of two hours at a time.   (Id. at 41, 104-05).   The ALJ found that this opinion was consistent with Plaintiff's treatment notes from the Coffeeville Medical Clinic on May 9, 2013, which showed that Plaintiff was alert and oriented times three, that she had good verbal skills,

and that she had excellent communication skills. (Id. at 41, 393). Also, as previously discussed, the ALJ noted that the record was devoid of any treatment by a psychologist or psychiatrist for any mental health issue. (Id. at 38).

Notwithstanding Plaintiff's argument to the contrary, the record shows that the ALJ did consider the evidence related to her mental limitations and expressly limited her RFC to "simple, routine tasks of unskilled work that require only simple workplace decisions and few changes in the work setting." (Id. at 39). Likewise, the ALJ did consider Plaintiff's mental limitations, as evidenced by his second hypothetical to the VE in which he asked the VE to assume an individual with Plaintiff's age, education, and work experience who was limited to the light exertion level and to "simple/routine tasks of unskilled work that would require only simple workplace decisions and would only have few changes in the work setting." As noted, the VE testified that such an individual could perform Plaintiff's past work as a garment trimmer. (Id. at 69-72). Indeed, Plaintiff has failed to point to any medical evidence suggesting limitations greater than those included in the RFC.

Based on the foregoing, the Court finds that Plaintiff's claim that the ALJ erred in failing to consider her mental impairments (i.e., her difficultly with memory) in determining her RFC and in his hypothetical to the VE is without merit. The

Court further finds, based on the evidence detailed herein, that the ALJ's RFC assessment and determination that Plaintiff can return to her past work as a collar turner are both supported by substantial evidence.

## V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **RECOMMENDED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability and disability insurance benefits be **AFFIRMED.**

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order

based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **26th** day of **January, 2017.**

                              /s/ SONJA F. BIVINS
                    UNITED STATES MAGISTRATE JUDGE